UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COSSETTA GROBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV988 CDP |
| | ) | |
| VANTAGE CREDIT UNION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

In this insurance coverage dispute, plaintiff Cossetta Grobe sued two

insurance companies who have refused to pay benefits under accidental death and

dismemberment policies held by her late-husband, Anthony. She has also sued

two companies – her credit union and a retail store – that sent out solicitations

offering the policies to their customers, including Grobe. Although complete

diversity is lacking on the face of the complaint – because plaintiff is a Missouri

citizen as is defendant Vantage Credit Union – defendants removed the case to

federal court, claiming that Vantage was fraudulently joined to defeat diversity

jurisdiction. I agree that there is no reasonable basis in fact and law to hold

Vantage liable, and so I will deny the motions to remand, and dismiss all claims

against Vantage.

Defendant Hartford Life and Accident Insurance Company has also moved to dismiss all counts against it, arguing that coverage under the policy is excluded under a "medical treatment" exclusion from the definition of "injury." I agree, and I will dismiss all counts against Hartford. Claims remain against defendants J.C. Penney Corporation, Inc. and Stonebridge Life Insurance Company.

## Background

In 2005, Cossetta Grobe received a mailing from her bank, Vantage Credit Union. The mailing offered Grobe an opportunity to sign up for $1000 in accidental death and dismemberment (AD&D) insurance coverage from the Hartford Life and Accident Insurance Company, paid for by Vantage, free of charge. The policy was offered as a benefit to Vantage's customers, inviting them to join the group policy issued by Hartford to Vantage. The mailing also offered Grobe the opportunity to purchase additional coverage under the group policy, up to $250,000, at group rates, with the premium to be deducted from Grobe's account at the Credit Union. Grobe checked three boxes on the activation form: one for the free $1000 coverage, one for $100,000 of additional coverage, and one for family coverage, covering her husband, Anthony. She signed, dated, and mailed the form in a postage-paid envelope.

In its motion to remand, Vantage attached the solicitation packet that it sent to its customers, including the filled-out form signed by Grobe. The solicitation

packet is four pages long, and includes a postage-paid envelope. The first page is a letter, signed by both Vantage's president and by Dave Ford, identified in the letter as an insurance agent for Hartford. The letter encourages Vantage customers to "accept [the] credit union-paid" AD&D coverage "made available through the Hartford." The letter also mentions the "opportunity to get up to $250,000 AD&D additional coverage, for as little as $1.00 a month per $10,000 of protection." The letter directs Vantage customers to "[s]ee the enclosed brochure for more information, including costs, exclusions, limitations, and terms of coverage."

The second page is the activation form, where the customer can select different types of coverage by checking various boxes. Directly above Grobe's signature on the activation form is the following language: "Charge Authorization. Yes, please sign me up for this insurance plan. I have received and read all insurance disclosures, and I authorize my credit union and its service provider to automatically charge my account . . . ." The third and fourth pages of the packet are insurance disclosures. On the last page of the packet, there is a section of print titled "Definitions/Exclusions." There, it states: "Loss resulting from sickness or disease, or medical treatment of sickness or disease, is not covered." After mailing in the solicitation form sometime in November 2005, the Grobes were issued an insurance certificate by defendant Hartford on December 7, 2005, indicating that the policy would be effective as of January 1, 2006.

On May 8, 2006, Grobe's husband died. Immediately before his death, Anthony Grobe took his prescription medication, methadone, as prescribed. He had been prescribed methadone by his physician for the treatment of a medical condition. Anthony Grobe had a preexisting medical history of insulin dependent diabetes and depression. The cause of death was determined to be accidental sustained acute methadone intoxication. Grobe filed for AD&D benefits under the policy. Defendant Hartford denied benefits, citing the "medical treatment of a sickness or disease" exception to coverage. After the denial, Grobe sued both Vantage and Hartford for negligent misrepresentation (Count I), breach of contract (Count III), and vexatious refusal to pay (Count V).[1]

I. Grobe's Motion to Remand

Federal courts are courts of limited jurisdiction. *Myers v. Richland County*, 429 F.3d 740, 745 (8th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As such, federal courts are authorized to hear cases only as provided by the Constitution and by statute. A party seeking to remove a case to federal court has the burden of establishing federal subject-matter jurisdiction. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

---

[1]Grobe also sued defendants J.C. Penney and Stonebridge for negligent misrepresentation (Count II), and defendant Stonebridge for breach of contract (Count IV) and vexatious refusal to pay (Count VI). These defendants have not filed motions as to the claims against them.

Under the doctrine of fraudulent joinder, a court may disregard the citizenship of a non-diverse defendant who was frivolously joined in an effort to defeat removal. *Commercial Sav. Bank v. Commercial Fed. Bank*, 939 F. Supp. 674, 680 (N.D. Iowa 1996). "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002) (citations omitted). Put another way, "if there is a 'colorable' cause of action – that is, if the state law *might* impose liability on the resident defendant under the facts alleged – then there is no fraudulent joinder." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original). A proper review focuses on the reasonableness of the factual basis underlying the claims. *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1004 (8th Cir. 2006) (citing *Filla*, 336 F.3d at 810). Joinder is fraudulent if the facts with respect to Vantage are "shown to be so clearly false as to demonstrate that no factual basis exists for any honest belief on the part of the plaintiff" that a cause of action exists against it. *Morris v. E.I. DuPont De Nemours*, 68 F.2d 788, 792 (8th Cir. 1934). However, if there is doubt as to the truth of the allegations, and if the question as to truth or falsity depends on witness credibility and the weight of the evidence, there is no fraudulent joinder. *Id.* If there is any question as to the sufficiency of the allegations against the non-diverse defendant, "the better practice is for the

federal court not to decide the doubtful question in connection with the motion to remand but simply to remand the case and leave the question for the state courts to decide. *Filla*, 336 F.3d at 811 (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 206 (8th Cir. 1977)).

In ruling on these motions, it is proper for me to consider affidavits and other evidence submitted by the parties. *Jones v. Chas. S. Lewis & Co.*, No. 4:08CV259 TCM, 2008 WL 2775705 (E.D. Mo. July 14, 2008); *see also Parnas v. Gen. Motors Corp.*, 879 F. Supp. 91 (E.D. Mo. 1995) (considering the parties' affidavits in addition to the parties' pleadings in determining the issue of fraudulent joinder); *Reeb v. Wal-Mart Stores*, 902 F. Supp. 185 (E.D. Mo. 1995) (The "most prudent method" of determining if a defendant was fraudulently joined is to consider materials outside the pleadings to see if they establish facts supporting the plaintiff's claims.); *Elliot v. Bridgestone/Firestone N. Am. Tire*, No. 4:05CV1297 CDP, 2006 U.S. Dist. LEXIS 8872 (E.D. Mo. Mar. 7, 2006) (considering affidavits and deposition testimony in ruling on a fraudulent joinder motion); *Petersen v. Rusch, Inc.*, No. 4:05CV1328 ERW, 2006 WL 83492 (E.D. Mo. Jan. 12, 2006) (looking to affidavit of non-diverse defendant to deny remand because affidavit denied involvement and was uncontradicted by plaintiff). Both parties have attached affidavits and other supporting material. I will only use

these materials to determine whether they establish facts supporting the claims, not whether they resolve the merits of the claims. *Jones*, 2008 WL 2775705, at *3.

Grobe has asserted three claims against the resident defendant Vantage: vexatious refusal to pay (Count V), negligent misrepresentation (Count I), and breach of contract (Count III). Grobe's claim against Vantage for vexatious refusal to pay fails because Vantage is not an insurance company. Under Missouri law, an action against an insurance company for vexatious refusal to pay benefits under an insurance policy exists "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse . . . ." Mo. Rev. Stat. § 375.420 (2008). To recover under this section, Grobe must show that the "insurer's refusal to pay was willful and without reasonable cause as it would appear to a reasonable and prudent person." *Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651, 657 (Mo. Ct. App. 2007) (quoting *Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767, 778 (Mo. Ct. App. 2004)). Where "the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense" there is no valid claim for vexatious refusal to pay. *Wood v. Safeco. Ins. Co. of Am.*, 980 S.W.2d 43, 55 (Mo. Ct. App. 1998). Missouri courts construe this statute strictly because it is penal in nature. *Thornburgh*, 236 S.W.3d. at 657 (citing *Smith*, 147 S.W.3d at 778).

Section 375.420 only applies to insurance companies. *Perkins v. Fleetline, Inc.*, No. 4:96CV2004 FRB, 1998 WL 35178378, at *4 (E.D. Mo. July 8, 1998) (granting summary judgment on a vexatious refusal to pay claim because defendant was not an insurance company or a commercial surety); *Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302, 306 (Mo. 1998) (en banc) (finding that a company that assumed certain "rights, duties, and obligations" of an insolvent insurer, was not an insurance company and thus could not be liable under a vexatious refusal to pay cause of action). Although Grobe alleges that Vantage "was an agent and broker of insurance in the State of Missouri," these allegations are contradicted by evidence attached to the complaint and to the motion to remand. Vantage is identified on the various insurance disclosures as a group policyholder, not an insurance company. Grobe's mere allegation that Vantage is an insurance company does not make it so. Vantage is a credit union, not an insurance company, and cannot be liable under section 375.420.

For Grobe to recover on her negligent misrepresentation claim against Vantage, she would have to show that: (1) Vantage supplied information in the course of its business; (2) because of a failure by Vantage to exercise reasonable care, the information was false; (3) the information was intentionally provided by Vantage for the guidance of a limited group of persons in a particular business transaction; (4) Grobe justifiably relied on the information; and (5) because of

Grobe's reliance on the information, she suffered a pecuniary loss. *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo. Ct. App. 2002). A claim for negligent misrepresentation can be premised on a failure to disclose information. *Id*. at 814. However, "non-disclosure amounts to a misrepresentation only when the person is under a duty to disclose." *Id*. (citing Rest. 2d Torts § 551(1)).

Grobe asserts that Vantage both affirmatively misrepresented facts and also failed to disclose information to her. In her complaint, Grobe alleges that Vantage represented to her that the purchased AD&D policy "would be payable" upon the accidental death of her spouse. This, according to Grobe, was an affirmative misrepresentation. In the solicitation letter Grobe received, it does not state that coverage "would be payable upon death." It does, however, direct the reader to "[s]ee the enclosed brochure for more information, including costs, exclusions, limitations, and terms of coverage." Grobe affirmed that she had read all insurance disclosures when she signed the "activation form." The insurance disclosures state conditions upon which her policy would not be payable upon death, including the medical treatment of sickness or disease exception. While the solicitation sent to Grobe does represent that Grobe, as Vantage's customer, was "guaranteed acceptance," this is not the same thing as "guaranteed coverage." Vantage did not make an affirmative misrepresentation about the coverage, and

Grobe's claim for negligent misrepresentation based on affirmative statements must be dismissed.

In addition to her allegations of affirmative misrepresentation, Grobe alleges that Vantage (1) failed to disclose, orally or in writing, any conditions that would ban coverage because of disease or use of medications; and (2) did not provide her with the mandatory accidental death policy at the time that she entered into the accidental death contract. The attached materials show that Vantage did disclose conditions that would ban coverage because of disease or use of medications. That exact exclusion is listed on the final page of the solicitation Vantage sent to Grobe. Grobe's claim that Vantage failed to provide her with the policy at the time she entered into the contract also fails. Grobe does not allege that she never received the insurance policy. Rather, she alleges that Vantage did not send it to her at the time she sent in the "activation form." However, Grobe's action in sending in the "activation form" did not constitute an acceptance of an offer for insurance. In Missouri, "an application for insurance is merely an offer, which may be accepted or rejected by the company. The sending of a different policy than that applied for constitutes a counteroffer. The insured has a reasonable time to accept or reject the policy . . . ." *Jenkad Enters., Inc. v. Transp. Ins., Co.* 18 S.W.3d 34, 38 (Mo. Ct. App. 2000) (quoting *Neuner v. Gove*, 133 S.W.2d 689, 694 (Mo. Ct. App. 1939)). Here, neither Vantage nor Hartford had a

duty to send the policy to Grobe with the application.  Grobe's signature on the activation form constituted an offer to the company.  The company accepted by later sending the full policy to Grobe.  It is not disputed that Grobe received the policy some time after her application was accepted.  That policy gives the policyholder thirty days to examine the terms, and allows the policyholder to reject the insurance during that time.  In Missouri, an insured has a duty to promptly examine its policy.  *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.,* 572 F.3d 511, 515 (8th Cir. 2009) (citing *Jenkad*, 18 S.W.3d at 38).  The policy, provided to Grobe after she sent in her "activation form," states the definitions and exclusions relied upon by Hartford to deny coverage.  Further, the insurance disclosures sent out with the activation form included the exclusions from coverage relied upon to deny coverage here. Vantage did not fail to disclose conditions, nor did its failure to provide the full policy at the time it sent out the "activation form" constitute a failure to disclose.  Grobe's claims for negligent misrepresentation based on non-disclosure have no reasonable basis in law or fact.

For Grobe to state a claim against Vantage for breach of contract, she must allege: (1) the making and existence of a valid and enforceable contract between Grobe and Vantage; (2) the right of Grobe and the obligation of Vantage under the contract; (3) a violation of the contract by Vantage; and (4) damages resulting to Grobe from the breach.  *Trotter's Corp. v. Ringleader Rests., Inc.*, 929 S.W.2d

935, 941(Mo. Ct. App. 1996) (citing *Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 208 (Mo. Ct. App. 1990)). Based on the facts alleged in the complaint, two potential contracts existed between Grobe and Vantage, neither of which has been breached. First, Vantage offered to pay for $1000 worth of insurance coverage. Grobe accepted. It is undisputed that Vantage performed that contract. Vantage did not promise that the policy would be paid, no matter what, when Grobe's husband died. Second, Vantage promised to deduct the premium for any additional coverage and send it to Hartford. Grobe accepted. It is undisputed that Vantage performed on that contract as well. There is no allegation that Vantage failed to transfer the premium money as promised.

Grobe further alleges that, in addition to the two promises Vantage made to her, Vantage also acted as Hartford's agent, and is thus liable on the insurance contract between Grobe and Hartford. In Missouri, an agent for a disclosed principal is not liable for the nonperformance of a contract. *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350, 355 (Mo. Ct. App. 2007) (citing *State ex rel William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140 (Mo. 1987) (en banc)); *see also Austin v. Trotter's Corp.*, 815 S.W.2d 951, 958 (Mo. Ct. App. 1991) (holding that an employee could not be personally liable for promises he made on behalf of his employer for breach of contract). Vantage, as Hartford's agent, is not liable for lawful acts performed within the scope of its

authority for a disclosed principal. *Town & Country Appraisals, LLC v. Hart*, 244 S.W.3d 187, 189 (Mo. Ct. App. 2007). Grobe does not dispute that Hartford is a disclosed principal, but, rather, argues that two exceptions to the disclosed principal rule apply here: (1) the agent may be liable if the agent contracts in its own name, rather than in the name of the principal; and (2) the agent may be liable if it acted in excess of its authority.

An agent to a disclosed principal may be personally liable to a third party for breach of contract if "the parties to the contract agree upon the personal liability of the agent." *Moore v. L.R. Seabaugh*, 684 S.W.2d 492, 494 (Mo. Ct. App. 1984) (citations omitted). A court can infer such an agreement "where the agent contacts in his own name, rather than on behalf of his principal." *Id*. (citations omitted). For example, an agent that signs a contract in its own name, rather than in the name of its disclosed principal, becomes personally liable. *Id*. Where, however, an agent signs an agreement on behalf of his disclosed principal "and the capacity in which the individual signs is evident" the agent will not be liable on the contract "absent clear and explicit evidence of an intention to be bound." *Id*. (citing *Wired Music, Inc. v. Great River Steamboat Co*., 554 S.W.2d 466, 468 (Mo. Ct. App. 1977)). Grobe, while pointing out the existence of this exception to the general disclosed principal rule, does not allege any facts that would make the exception apply in this case. There is no evidence that Vantage

signed its own name on any contract. In fact, the attached materials show that Vantage disclosed Hartford as the insurer. Dave Ford, a Hartford insurance agent, signed the initial solicitation letter. That letter identifies that the insurance is made available through the Hartford, which is further identified as an insurance company. Hartford is identified on the solicitation form filled out by Grobe, and on the insurance disclosures that follow. Each and every document attached to the complaint and motion to remand identifies Hartford as the insurance company.

Another exception to the disclosed principal rule occurs when an agent to a disclosed principal acts in excess of his authority to create a contract in the name of his principal. *Byers v. Zuspan*, 264 S.W.2d 944, 947 (Mo. Ct. App. 1954). In that case, the agent may be liable for breach of express or implied covenant of authority, not on the contract itself. *Id*. Again, there is no factual support in the complaint, nor evidence in the attached materials, that Vantage did this. Grobe points to the "guaranteed acceptance" language attached to the activation form. This language is not attributable to Vantage, and, as discussed above, it was not breached. Here, if Vantage is considered to be the agent of Hartford, as Grobe alleges, Hartford is the disclosed principal. Because neither exception to the disclosed principal rule applies, Vantage cannot be held liable for breach of the insurance contract.

In the complaint, Grobe alleges that Vantage did four things: (1) promoted and allowed Hartford access to its customers for the insurance promotion; (2) provided to its customers the applications for the policy; (3) paid the premiums for $1000 worth of coverage; and (4) collected premiums on behalf of Hartford. Claims for vexatious refusal to pay, negligent misrepresentation, and breach of contract cannot be premised on these facts. Plaintiffs have not provided any reasonable factual support for their allegations against Vantage. As there is no colorable claim against Vantage, I may disregard its citizenship in determining whether diversity jurisdiction exists. Without Vantage, there is complete diversity. Removal was therefore proper, and I will deny the motion to remand.

II.     Hartford's Motion to Dismiss

Having determined that I have jurisdiction over this case, I now turn to Hartford's motion to dismiss. A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are construed in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Under notice pleading practice, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although specific facts are not necessary, the plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. *McDonald v. Nelnet, Inc.*, 477 F. Supp. 2d 1010, 1012 (E.D. Mo. 2007); *Deerbrook Pavilion, LLC, v. Shalala,* 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Because the insurance contract and the solicitation form are attached as exhibits to Grobe's complaint and pleadings, I may consider them in ruling on the motion to dismiss. *See Centers v. Centennial Mortgage., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) (a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to relief).

It is undisputed that Anthony Grobe died from acute methadone intoxication, and that Grobe was taking methadone as prescribed by his doctor for

a sickness or disease.  Where the cause of an insured's death is not in dispute, it is purely a question of law as to whether the death resulted from a cause insured against by the policy.  *Dezell v. Fidelity & Cas. Co.*, 75 S.W. 1102, 1104 (Mo. 1903) (en banc).  The language of an insurance policy must be given its plain meaning, that is "the meaning that would ordinarily be understood by a layperson who bought the policy." *Haulers Ins. Co. v. Wyatt*, 170 S.W.3d 541, 545-46 (Mo. Ct. App. 2005) (citation omitted).  In Missouri, where "an insurance policy is unambiguous, it will be enforced as written absent a statute or public policy requiring coverage." *Am. Family Mut. Ins. Co. v. Turner*, 824 S.W.2d 19, 21 (Mo. Ct. App. 1991) (citing *Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. 1991) (en banc)).  An ambiguity may arise "when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Rodriguez*, 808 S.W.2d at 382.  Ambiguity may also exist in an insurance policy if its language is "reasonably and fairly open to different constructions."  *Krombach v. Mayflower Ins. Co.*, 785 S.W.2d 728, 731 (Mo. Ct. App. 1990).  An "ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the associated words." *Am. Std. Ins. Co. of Wis. v. May*, 972 S.W.2d 595, 602 (Mo. Ct. App. 1998) (citation omitted).  "As such, one must consider the language at issue in the context of the entire policy." *Id*.  Because an insurance policy is designed to furnish protection, an ambiguous policy will be interpreted to

afford coverage and not to defeat coverage. *Krombach*, 785 S.W.2d at 731. That

is, ambiguous provisions of insurance policies are construed against the insurers.

*Am. Std.*, 972 S.W.2d at 602; *Gardner v. Hartford Life & Acc. Ins. Co.*, No.

2:08CV4030 NKL, 2008 WL 4279815, at *2 (W.D. Mo. Sept. 15, 2008). On the

other hand, "unambiguous provisions will be enforced as written." *Am. Std.*, 972

S.W.2d at 602. Under Missouri law, insurance policy exclusions are strictly

construed against the insurer, and it is the insurer's burden to prove that an

exclusion applies. *Spirtas Co. v. Fed. Ins. Co.*, 481 F. Supp. 2d 993, 997 (E.D.

Mo. 2007) (citations omitted).

Here, Grobe attached a copy of the insurance policy to her complaint. In

that document, there is a definition of "injury" and a section on "exclusions." The

definition of "injury" in the policy is:

> bodily injury resulting directly from accident and independently of all
> other causes which occurs while the Covered Person is covered under
> the policy. Loss resulting from: a) sickness or disease; or b) medical
> or surgical treatment of a sickness or disease; is not considered as
> resulting from injury.

Under "exclusions," the policy "does not cover any Loss resulting from: Injury

sustained while voluntarily taking drugs which federal law prohibits dispensing

without a prescription, including sedatives, narcotics, barbiturates, amphetamines,

or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician."

Anthony Grobe died because of accidental sustained acute methadone intoxication. The methadone had been prescribed by his physician for the treatment of a medical condition. Hartford denied coverage because the policy excludes loss resulting from medical treatment of a sickness or disease from the definition of injury. Under Hartford's reasoning, prescribing drugs for a medical condition constitutes medical treatment of a sickness or disease. Grobe disagrees with Hartford's interpretation of the policy. She argues that, while her husband's death was a result of taking prescribed medication, the policy cannot intend to exclude deaths caused by prescribed drugs because such an interpretation would render the drug exclusion, found later in the policy, moot. That exclusion specifies that losses occurring while taking otherwise regulated drugs are excluded from coverage, unless the drugs were prescribed by a doctor. If taking drugs prescribed by a doctor for medical treatment of a sickness or disease is not an injury under the policy in the first place, as Hartford argues, then the exception to the regulated drug use exclusion for prescribed drugs would be unnecessary. Grobe argues that these two provisions conflict, making the policy language ambiguous. Because ambiguous policies should be construed against the insurer, Grobe argues, Hartford's motion to dismiss must be denied.

As a preliminary matter, an exclusion in an AD&D policy for medical treatment of a sickness or disease unambiguously includes death caused by accidentally overdosing on a drug prescribed by a doctor for a medical condition. *See, e.g. Barkerding v. Aetna Life Ins. Co*., 82 F.2d 358, 359 (5th Cir. 1936) ("Medical and surgical treatment mean what is done by a physician . . . in diagnosing a bodily ailment and seeking to alleviate or cure it. It includes the things done by the patient to carry out specific directions given for these ends by a physician."). In *Barkerding*, a patient accidentally burned his foot after following a physician's order to use a lightbulb to heat his foot, but used a higher watt bulb than was necessary. The Fifth Circuit held that "[t]he excess of heat is like an overdose of a prescribed drug ignorantly taken by a patient, the effect of which is held to be the result of medical treatment" under a policy excluding medical treatment. *Id*. In *Swisher-Sherman v. Provident Life & Accident Insurance Company*, 37 F.3d 1500, 1994 WL 562050, slip op. at 1 (6th Cir. 1994), the Sixth Circuit interpreted a policy that excluded "loss directly or indirectly result[ing] from . . . medical or surgical treatment for . . . infirmity or disease." In that case, the deceased was prescribed heart medication by his doctor, but he was given the wrong drug and died as a result. The court noted that "such *medical* mishaps can only occur during the course of treatment" and held that the exclusion was

unambiguous and precluded coverage under the policy. *Id*. at *2 (emphasis in original).

Grobe argues that, while the medical treatment exclusion may be unambiguous on its own, when read in conjunction with the prescription drug exclusion in this policy, the language becomes ambiguous and thus must be construed against Hartford and in favor of coverage. In *Clark v. Metropolitan Life Insurance Company*, 369 F. Supp. 2d 770 (E.D. Va. 2005), the court interpreted the relationship between a "medical treatment" exclusion and a prescription drug exclusion. In *Clark*, the insurance policy in question excluded "losses due to, contributed to, or caused by" both "physical or mental illness or diagnosis or treatment for the illness" and "the use of any drug or medicine, unless used on the advice of a licensed medical practitioner." *Id*. at 772. In *Clark*, the deceased was determined to have died from medication poisoning from a mixture of five drugs. *Id*. These drugs had been prescribed to the deceased by his doctor for the treatment of anxiety and panic disorders and acute bronchitis. *Id*. The deceased took his medication as prescribed. *Id*. at 773. The *Clark* court declined to follow *Swisher-Sherman* and other cases excluding coverage under the medical treatment exclusion because those cases did not involve policies that also included a prescription drug exclusion. *Id*. at 777. If all deaths that were caused by medical treatment of an illness were excluded under the first exclusion, this would,

according to the *Clark* court, include all deaths resulting from the use of medicine prescribed by a doctor where that medicine was prescribed to treat an illness. *Id.* at 778. If the medical treatment exclusion is read to include prescription drugs, then, the second exclusion is unnecessary. The court in *Clark* held that "the exclusions, read in conjunction, must not exclude death caused by the use of medicine on the advice of a licensed medical practitioner where the medicine was prescribed to treat an illness." *Id.*

Here, I decline to follow the reasoning of the *Clark* court. The prescription drug exclusion is not rendered moot by the definition of "injury" in the policy. *See, e.g.*, *Estate of Wedgewood v. Hartford Life & Accident Ins. Co.*, No. 09-607, 2009 WL 4573302 (W.D. Pa. Dec. 1, 2009) (court interpreted an AD&D policy with both the "medical or surgical treatment" exclusion and the prescription drug exclusion, applying both exclusions to insured's death by accidental morphine intoxication, and dismissing breach of contract claim based on the unambiguous policy provisions). Under this AD&D policy, the initial question is whether there was an injury. If a drug is taken by an individual in the course of medical treatment of a sickness or disease, and a loss results from (in other words, is caused by) that drug use, there is no injury and the inquiry ends. If a drug is taken for a reason unrelated to sickness or disease, the prescription drug provision is triggered, and the source of the drug must be examined.

Under the "Exclusions" section of the policy, certain types of losses are excluded from coverage. Among these exclusions are losses resulting from: self-inflicted injuries, injuries sustained while riding on certain types of aircraft, injury sustained while committing or attempting to commit a felony, and injuries sustained as a result of being legally intoxicated. In that section, the policy excludes from coverage losses resulting from "injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription," unless those drugs were prescribed by a licensed physician. Any loss resulting from an injury that occurs while taking drugs, without a prescription, is not covered.

For example, imagine two individuals covered under this policy each broke a bone in an accident. To deal with the pain from the break and surgery, both individuals then took a drug that, under federal law, cannot be dispensed without a prescription. Individual One went to the doctor to get the prescription. Individual Two took the medication from her friend, who had been prescribed the medication from a former accident. If both individuals died of overdoses, Individual One would be covered by this policy, and Individual Two would not. Both individuals suffered a loss under the definition of injury in the policy because they were taking the medication because of an accident, and not as "medical or surgical treatment of a sickness or disease." The prescription drug exclusion is triggered because both

individuals took regulated drugs, and suffered an injury while doing so. Individual Two cannot collect on the policy because her injury was "sustained while voluntarily taking drugs" and she did not have a prescription. Individual One can collect, however, because, unlike Individual Two, she received a prescription for her drugs because of the original accident.

The AD&D policy here makes a distinction between losses resulting from drug use prescribed as treatment for a sickness or disease (not covered); losses sustained while taking drugs prescribed for other reasons, such as pain medication for an injury caused by an accident (covered); and losses sustained while using drugs not prescribed (not covered) or prescribed but not taken as prescribed (not covered). This distinction is based, it seems, on the difference between a death that is "foreseeable"or in some way related to an assumed risk, and one that is not. AD&D policies are intended to cover accidental deaths and losses, not all deaths and losses. The medical treatment exclusion is intended to exclude coverage for those individuals who have assumed the risks of medical treatment, including the possibility of death. Courts have consistently held that a medical treatment exclusion applies to accidental death caused by an overdose of drugs prescribed by a doctor in the course of a treatment for a sickness or disease. Death caused by sickness or disease, and the medical treatment sought for such, is not unforeseeable. The prescription drug language further excludes those losses that

occur when an individual takes regulated drugs without a prescription.  Taking

regulated drugs without a prescription is the sort of assumed-risk behavior that

could make a loss foreseeable.  The other exclusions in the policy similarly

involve assumed-risk types of behavior.  The exception to the prescription drug

exclusion, for when an individual is prescribed a regulated drug by a physician for

something unrelated to disease or sickness, and suffers a loss while taking that

drug, recognizes the difference between taking drugs illegally and taking them

legally.  This exception to the exclusion does not, however, modify the definition

of "injury" found at the beginning of the policy, which specifies that losses

resulting from medical treatment of a sickness or disease are not injuries.  The two

provisions do not conflict, and the insurance policy is not ambiguous.  As such, it

will be "enforced as written." *Am. Std.*, 972 S.W.2d at 602.

Here, Anthony Grobe suffered a loss while taking medication that had been

prescribed by his doctor for the treatment of a sickness or disease.  This is not an

injury under the policy, and it is not covered.  The prescription drug exclusion is

not triggered, because his loss was not an injury under the policy.  Because there is

no coverage under the policy, as a matter of law, Grobe's breach of contract claim

fails to state a claim upon which relief can be granted.  It follows that Grobe's

claim for vexatious refusal to pay must also fail.  There is no liability under the

policy as a matter of law, and this is a meritorious defense for vexatious refusal to

pay. *Groves v. State Farm Mutual Auto. Ins. Co.*, 540 S.W.2d 39, 42 (Mo. 1976) (en banc). Grobe also brings a negligent misrepresentation claim against Hartford, alleging, as she did against Vantage, that Hartford both affirmatively lied to her and failed to disclose facts to her. The same reasoning I applied to Vantage's claim applies here, and for the same reasons this claim against Hartford fails.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand [# 17] is denied.

**IT IS FURTHER ORDERED** that defendant Vantage Credit Union's motion to dismiss Counts I, III, and V of the complaint [#20] is granted. Counts I, III, and V of the complaint are dismissed as against Vantage, and defendant Vantage is dismissed as a party.

**IT IS FURTHER ORDERED** that defendant Hartford's motion to dismiss [#13] is granted. Counts I, III, and V of the complaint are dismissed as against defendant Hartford, and Hartford is dismissed as a party.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2010.